UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, *SENIOR JUDGE*

_____

|  |  |
|---|---|
| SHAMROCK BUILDING MATERIALS, INC., | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| THE UNITED STATES, | : |
|  | : |
| Defendant. | : |

Court No. 20-00074

_____

## **ORDER**

Upon reading plaintiff's motion in limine to preclude defendant's proposed expert witness, Dr. Athanasios Meliopoulos, and the defendant's response thereto; and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion be, and hereby is denied.


_____
Timothy C. Stanceu, Judge

Dated: _____
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, *SENIOR JUDGE*

| | | |
|---|---|---|
| SHAMROCK BUILDING MATERIALS, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00074 |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION IN LIMINE TO PRELCUDE DEFENDANT'S EXPERT WITNESS</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Defendant

Dated: May 2, 2022

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

I.   UNDER FEDERAL RULE OF EVIDENCE 702 EXPERT TESTIMONY IS
ADMISSIBLE IF IT IS RELIABLE AND RELEVANT .................................................. 4

II.  DR. MELIOPOULOS'S TESTIMONY IS RELIABLE BECAUSE HE IS
EMINENTLY QUALIFIED TO PROVIDE AN OPINION AS TO WHETHER
THE INTERIOR COATING PROVIDES ELECTRICAL INSULATION ..................... 6

III. DR. MELIOPOULOS'S TESTIMONY IS ADMISSIBLE BECAUSE IT IS
RELEVANT TO RESOLVING A FACTUAL DISPUTE PUT AT ISSUE BY
PLAINTIFF'S COMPLAINT ............................................................................................ 9

IV. PLAINTIFF'S REMAINING ARGUMENTS IN SUPPORT OF THE MOTION
IN LIMINE ARE WITHOUT MERIT ........................................................................... 13

Conclusion .................................................................................................................. 14

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Ambrosini v. Labarraque,*
    101 F.3d 129 (D.C. Cir. 1996) ................................................................ 10

*Brookside Veneers, Ltd. v. United States,*
    847 F.2d 786 (Fed. Cir. 1988) .................................................................. 2

*Carl Zeiss v. United States,*
    195 F.3d 1375 (Fed. Cir. 1999) ................................................................ 2

*Chemtall, Inc. v. United States,*
    878 F.3d 1012 (Fed. Cir. 2017) ................................................................ 8

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993) ......................................................................*passim*

*Faus Grp., Inc. v. United States,*
    581 F.3d 1369 (Fed. Cir. 2009) ................................................................ 2

*Gen. Elec. Co. v. Joiner*
    522 U.S. 136 (1997) .................................................................... 13, 14

*Nease v. Ford Motor Co.,*
    848 F.3d 219 (4th Cir. 2017) ................................................................ 10

*Orlando Food Corp. v. United States,*
    140 F.3d 1437 (Fed. Cir. 1998) ................................................................ 2

*Quiet Technology DC-8, Inc. v. Hurel-Dubois UK LTD.,*
    326 F.3d 1333 (11th Cir. 2003) .......................................................... 9, 10

Rocknel Fastener, Inc. v. United States,
    267 F.3d 1354 (Fed. Cir. 2001) ................................................................ 8

*Ruiz-Trouche v. Pepsi Cola of Puerto Rico Bottling Co.,*
    161 F.3d 77 (1st Cir. 1998) ................................................................ 10

*Samsung Int'l, Inc. v. United States,*
    887 F. Supp. 2d 1330 (Ct. Int'l Trade 2012), *aff'd*, 546 F. App'x 961 (Fed. Cir. 2013) ........... 8

*Sigma-Tau HealthScience, Inc. v. United States,*
    838 F.3d 1272 (Fed. Cir. 2016) ................................................................ 2

*Smith v. Ford Motor Co.*,
   215 F.3d 713 (7th Cir. 2000).................................................................................. 4, 5

*United States v. Williams*,
   235 F. App'x 925 (3d Cir. 2007) .................................................................................. 10

*Victoria's Secret Direct, LLC v. United States*,
   769 F.3d 1102 (Fed. Cir. 2014)...................................................................................... 2

*Zuchowicz v. United States*,
   140 F.3d 381, (2d Cir. 1998)................................................................................. 10, 11

## Harmonized Tariff Schedule of the United States (HTSUS)

Chapter 73

   7306.30.10...................................................................................................................... 1

Chapter 85 .......................................................................................................................... 8

   8547.90.00.............................................................................................................*passim*

   8547.90.0020 ................................................................................................................ 11

## Rules

Fed. R. Evid. 702 ................................................................................................*passim*

## Other Authorities

*Insulate*, Merriam Webster Dictionary
   https://www.merriam-webster.com/dictionary/insulate......................................... 2, 3

*Insulating*, Cambridge Dictionary
   https://dictionary.cambridge.org/us/dictionary/english/insulating ............................ 3

National Electrical Code (NEC) section 250.118 ....................................................... 13

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, *SENIOR JUDGE*

| | | |
|---|---|---|
| SHAMROCK BUILDING MATERIALS, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00074 |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION IN LIMINE TO PRELCUDE DEFENDANT'S EXPERT WITNESS

The United States, defendant (the Government), respectfully submits this memorandum of law in response to plaintiff's motion in limine, which seeks to preclude defendant's expert witness, Dr. Athanasios Meliopoulos, from giving evidence and testimony in this matter under Federal Rule of Evidence (FRE) 702.

## INTRODUCTION

This case concerns the proper classification of plaintiff's imported electrical conduit under the Harmonized Tariff Schedule of the United States (HTSUS). The electrical conduit consists of welded carbon steel tubing that is used to route electrical wiring in buildings or other structures. Compl. ¶¶ 9, 10. The interior surface of the electrical conduit is coated with a thin layer of organic epoxy enamel. Compl. ¶ 11.

U.S Customs and Border Protection (CBP) classified the electrical conduit under subheading 7306.30.10, HTSUS, which covers "Other tubes, pipes and hollow profiles (for example, open seamed or welded, riveted or similar closed), of iron or steel." Plaintiff disputes this classification and contends that the electrical conduit is properly classifiable in subheading 8547.90.00, HTSUS. Compl. ¶ 33. Subheading 8547.90.00, HTSUS, covers "electrical conduit

tubing and joints therefor, of base metal lined with insulating material." The Government does not dispute that the imported merchandise consists of electrical conduit tubing of base metal. Thus, the classification of the imported merchandise will likely turn on the question of whether the interior coating that lines the electrical conduit qualifies as "insulating material" under subheading 8547.90.00, HTSUS.

The proper classification of goods under the HTSUS is a two-step process. *Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016). First, the Court ascertains the meaning of the specific terms in the tariff provision. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). Absent contrary legislative intent, the Court construes HTSUS terms according to their common and commercial meanings, which are presumed to be the same. *Carl Zeiss v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). To assist it in ascertaining the common meaning of a tariff term, the Court may rely upon the term's ordinary meaning, lexicographic and scientific authorities, dictionaries, and other reliable information sources. *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed. Cir. 1988). Second, the Court determines whether the goods come within the description of those terms. *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1106 (Fed. Cir. 2014). This step is a factual inquiry. *Id.* When there is no factual dispute regarding the nature, structure, and use of imported merchandise, the proper classification turns on the first step. *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1372 (Fed. Cir. 2009).

Here, the Court will be interpreting the meaning of the phrase "insulating material" to determine the classification of the electrical conduit. Subheading 8547.90.00, HTSUS. The common meaning of the term "insulate" is "to separate from conducting bodies by means of nonconductors so as to prevent transfer of electricity, heat, or sound." Merriam Webster

Dictionary *available at* https://www.merriam-webster.com/dictionary/insulate.  Similarly, "insulating" is defined as "to cover and surround something with a material or substance in order to stop heat, sound, or electricity from escaping or entering."  Cambridge Dictionary *available at* https://dictionary.cambridge.org/us/dictionary/english/insulating.  Plaintiff seemingly agrees with this definition.  In the complaint, plaintiff asserts that the interior coating qualifies as "insulating material" because it provides electrical insulation.  Compl. ¶ 50.

We have researched the field of electrical engineering and have identified Dr. Meliopoulos, a renowned electrical engineer, to assist the Court as an expert witness in this case.  Def. Def. Ex. 1 at attachment A.  He is an expert in the field of electrical engineering and will aid the Court in ascertaining whether the electrical conduit at issue is lined with insulating material within the meaning of subheading 8547.90.00, HTSUS.  The Government engaged him as an expert in this matter to perform electrical testing on the electrical conduit to determine if the interior coating provides insulation against electricity.  Def. Def. Ex. 1 at 16–31.

In its motion in limine, plaintiff contends that determining whether the interior coating insulates against electricity is not relevant.  Pl. Mot. at 3.  Plaintiff claims, without factual basis or legal analysis, that "the chemical composition of the lining of the tubing must be established in order to determine whether the constituent materials in the lining are insulating materials."  *Id.*  It is on this basis, that plaintiff seeks to preclude the Government's witness.

Plaintiff appears to challenge the admissibility of Dr. Meliopoulos's testimony on two grounds: (1) qualifications (Dr. Meliopoulos "is not qualified to render opinion testimony on whether the importer electrical conduit tubing is lined with 'insulating material'") (Pl. Mot. at 3); and (2) relevance (arguing that Dr. Meliopoulos's testimony "will not 'help the trier of fact to understand the evidence or to determine a fact in issue'") (Pl. Mot. at 6).

Plaintiff is incorrect as to both claims.  As will demonstrated below, Dr. Meliopoulos will aid the Court in ascertaining whether the interior coating of the electrical conduit provides electrical insulation.  He is eminently qualified in advising the Court as to this question, and because the electrical properties of the interior coating of the imported merchandise is central to this litigation, his knowledge is relevant and should be considered and admitted by the Court. Consequently, plaintiff's motion should be denied.

## I.   UNDER FEDERAL RULE OF EVIDENCE 702 EXPERT TESTIMONY IS ADMISSIBLE IF IT IS RELIABLE AND RELEVANT

The admission of expert testimony is governed by FRE 702 and the standards articulated by the United States Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court interpreted this rule to require that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  "In other words, as a threshold matter 'a district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue.'"  *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citations omitted).

First, "[i]n analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Id.* at 718.  This analysis includes ensuring that

even a "'supremely qualified expert [does not] waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method.'"  *Id.* (citations omitted).  Second, "[w]hen analyzing the relevance of proposed testimony, the district court must consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case."  *Id.*

Here, plaintiff argues that Dr. Meliopoulos "is not qualified to render opinion testimony on whether the importer electrical conduit tubing is lined with 'insulating material'" (Pl. Mot. at 3) and that his testimony "will not 'help the trier of fact to understand the evidence or to determine a fact in issue.'" (Pl. Mot. at 6).  Thus, plaintiff challenges Dr. Meliopoulos's qualifications and the relevancy of his opinion but not the reliability of the methods he employed to reach his conclusions.

Because plaintiff does not contest the reliability of Dr. Meliopoulos's methods, we limit our remaining remarks in this brief to demonstrating his qualifications and the relevancy of his opinions to disputed issues in this case.  However, if, at the time of summary judgment or trial, plaintiff challenges the methodology employed by Dr. Meliopoulos, we stand at the ready to defend his methodology, in the context of a *Daubert* hearing or otherwise.[1]

---

[1] In *Daubert*, the Supreme Court directed the trial courts to consider the following factors in determining whether the reasoning or methodology underlying an expert's testimony is scientifically valid: (1) whether it can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a consideration of the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and, (4) whether the theory enjoys general acceptance in the scientific community. *Daubert*, 509 U.S. at 592–93.

II.   **DR. MELIOPOULOS'S TESTIMONY IS RELIABLE BECAUSE HE IS EMINENTLY QUALIFIED TO PROVIDE AN OPINION AS TO WHETHER THE INTERIOR COATING PROVIDES ELECTRICAL INSULATION**

As outlined above, one of the central questions before the Court in this case is whether the interior coating of the electrical conduit qualifies as "insulating material" within the meaning of subheading 8547.90.00, HTSUS.  To qualify as "insulating," the interior coating must resist electricity.  *See supra* at 3–4, Dictionary Definitions of "Insulate" and "Insulating."  Indeed, the electrical conduit is used to route, protect, and house electrical wires in buildings and other structures.  Compl. ¶ 9, 15, 16.  Plaintiff's pleadings support this understanding of the merchandise.  Compl. ¶ 50 ("the coating provides electrical insulation by constituting a barrier against the transfer of electrons to the interior metal surface of the pipe, thereby increasing the electrical resistivity of the conduit").

It is in this area that Dr. Meliopoulos — through his knowledge, skill, experience, training, and education — is supremely qualified to conduct testing, render an opinion, and ultimately aid the Court it making a factual determination.

Dr. Meliopoulos's *curriculum vitae* is attached as attachment A to Defandant's Exhibit 1. Dr. Meliopoulos holds a PhD in electrical engineering, which he obtained from the Georgia Institute of Technology in 1976.  Since then, he has worked as a professional electrical engineer in the field and is currently a professor at the Georgia Institute of Technology, School of Electrical and Computer Engineering in Atlanta, Georgia.  *See* Def. Ex. 1, attachment A at 1. Over his career, Dr. Meliopoulos has more than 47 years of experience in power system analysis (which includes the use of electrical conduit), design and automation, and he has developed analysis tools for transmission planning, reliability analysis, safe ground designs, lightning protection, three-phase power flow, short circuit analysis, dynamic bus design, and transients.

He introduced dynamic state estimation based protection (setting-less relay) and protection of energy automation systems against cyber-attacks.  He has performed numerous studies and he has published authoritative text books, all related to the field of electrical engineering.  He has published over 400 technical papers relating to electrical engineering and he has taught over 300 short courses/continuing education programs to practicing electrical engineers in addition to teaching regular classes at Georgia Tech.  He has consulted with most major utilities in the United States and abroad regarding power systems.  He holds three patents related to electrical engineering and power systems.  He has received numerous honors and awards for his achievements in the field of electrical engineering and is a Fellow in the Institute of Electrical and Electronics Engineers (IEEE).  He has mentored and graduated 42 students in the Georgia Tech PhD program in electrical engineering.  *See generally* Def. Ex. 1 attachment A.

Based upon Dr. Meliopoulos's knowledge, skill, experience, training, and education he is eminently qualified as an expert in the field of electrical engineering under FRE 702.  Thus, he is qualified to conduct electrical tests upon the interior coating of the electrical conduit and to advise the Court as to whether it insulates against electricity.[2]

Additionally, plaintiff argues that Dr. Meliopoulos is unqualified to provide testimony as to his personal understanding of the meaning of "insulating," as that term is used in the electrical industry.  Pl. Mot. at 6 ("The question of whether the subject lining falls within the common

---

[2] Plaintiff attacks Dr. Meliopoulos's qualifications on the grounds that he "is unqualified to testify as an expert and give opinion testimony on the chemical composition of the lining." Pl. Mot. at 4.  However, plaintiff's complaint shows that the chemical composition of the interior coating is not the critical inquiry before the Court.  Compl. ¶ 50 ("the coating provides electrical insulation by constituting a barrier against the transfer of electrons to the interior metal surface of the pipe, thereby increasing the electrical resistivity of the conduit").  Rather, the central question is whether the interior coating is considered "insulating material."  As will be discussed more fully below, plaintiff's complaint puts this question squarely before the Court, and the views of Dr. Meliopoulos are highly relevant to this inquiry.

meaning of the term, 'insulating material,' is also a question of law to be decided by the Court and not a purported expert.").  Plaintiff's contention is incorrect.

"Insulating material" of subheading 8547.90.00, HTSUS, is not defined by the tariff.  In construing the common meaning of an undefined tariff term, "a court may consult dictionaries, scientific authorities, and other reliable information sources and lexicographic and other materials." *Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356–57 (Fed. Cir. 2001) (quotations and citations omitted).  A court may also consider expert opinions "to the extent they are consistent with lexicographic and other reliable sources." *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1023 n. 5 (Fed. Cir. 2017) (quotation and citation omitted).  In such cases, "the court considers expert opinions, not as fact witnesses, but as experts on the common meaning or understanding of a term in a particular industry." *Samsung Int'l, Inc. v. United States*, 887 F. Supp. 2d 1330, 1339 n.18 (Ct. Int'l Trade 2012), *aff'd*, 546 F. App'x 961 (Fed. Cir. 2013) (internal quotation omitted).

Here, the meaning of the tariff term "insulating material" found in subheading 8547.90.00, HTSUS, will be evaluated by this Court.  The electrical industry's understanding of that term will be highly useful for this inquiry as that industry uses electrical conduit on a day to day basis.  The relevancy of the electrical industry is shown by the tariff.  Chapter 85, HTSUS, covers "Electrical Machinery and Equipment and Parts Thereof" and the "insulating material" referred to in subheading 8547.90.00, HTSUS, lines "electrical conduit tubing," which is "used to route electrical wiring in a building or other structure" (Compl. ¶ 9).  Plaintiff also claims that this "insulating material" provides insulation against electricity.  Compl. ¶¶ 20, 21, 23, 25, 26, 50.

8

Given this context, the common meaning or understanding of the term "insulating" by the electrical industry will be highly useful for the Court.  Dr. Meliopoulos will describe his personal understanding of that term, given his many years in the field of electrical engineering, and his extensive experience with power systems (which includes the use of electrical conduit). Consequently, his testimony regarding his understanding of the term will aid the Court in determining the common and commercial meaning of "insulating material."

### III.    DR. MELIOPOULOS'S TESTIMONY IS ADMISSIBLE BECAUSE IT IS RELEVANT TO RESOLVING A FACTUAL DISPUTE PUT AT ISSUE BY PLAINTIFF'S COMPLAINT

"Rule 702 . . . requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue.  This condition goes primarily to relevance.  Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotations and citations omitted).

Expert testimony is relevant when it will aid the trier of fact in resolving a factual dispute alleged in the complaint.  *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK LTD.*¸ 326 F.3d 1333 (11th Cir. 2003).  For example, in *Quiet Technology* the defendant proffered an expert aerodynamics specialist to opine as to the cause of performance loss on aircrafts fitted with the plaintiff's hush kit.  *Id.* at 1338.  Plaintiff moved to preclude this expert as irrelevant because the expert did not discuss Quiet Technology's latest version of its hush kit that was fitted on airplanes — the expert only examined and opined on earlier versions of the hush kit that were used during trials performed by the plaintiff.  *Id.* at 1339.  The district court denied plaintiff's motion and the Eleventh Circuit affirmed the district court's decision.  Relying on *Daubert*, the court of appeals observed that:

> An additional consideration under Rule 702 — and another aspect
> of relevancy — is whether expert testimony proffered in the case is

> sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.   The consideration has been aptly described . . . as one of 'fit.'

*Id.* at 1347 (citations omitted).

On this basis, the Eleventh Circuit held that the expert's testimony was a "fit" because the allegations made in plaintiff's complaint put at issue expenditures that it made for developing every version of the hush kit — including the version examined and opined upon by defendant's expert. *Id.* at 1347.  Thus, the expert testimony was relevant to disputed issues in the case (*i.e.*, early versions of the hush kit) and therefore admissible.

Various courts of appeals around the country have adopted a similar analysis when an expert's testimony is challenged on relevancy grounds.  *See, e.g.*, *Ruiz-Trouche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) ("In other words, Rule 702, as visualized through the *Daubert* prism, 'requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'") (citations omitted); *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (requiring expert testimony to be relevant, in that it helps "the trier of fact to understand evidence or to determine a fact in issue") (citations omitted); *Ambrosini v. Labarraque*, 101 F.3d 129, 136 (D.C. Cir. 1996) ("The dispositive question is whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue,' not whether the testimony satisfies the plaintiff's burden on the ultimate issue at trial.") (citations omitted); *United States v. Williams*, 235 F. App'x 925, 927 (3d Cir. 2007) (finding that the Government's expert testimony regarding reverse projection photogrammetry technique was "relevant to the primary issue of height in this case and the admission of his testimony would aid the trier of fact in making a determination of height"); *Zuchowicz v. United States*, 140 F.3d 381,

386 (2d Cir. 1998) ("Under *Daubert,* trial judges are charged with ensuring that expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'") (citations omitted).

Accordingly, if the expert testimony addresses a fact in issue — and will assist the fact finder in its resolution — the evidence is relevant and admissible under FRE 702 and *Daubert*.

Here, Dr. Meliopoulos's testimony regarding the electrical testing he performed on the interior coating of the electrical conduit, and the electrical insulation it fails to provides, is admissible because it is relevant to plaintiff's allegations in the complaint.

Indeed, in Count I of the complaint, plaintiff contends that:

> Plaintiff's finished electrical conduit is properly classified under subheading 8547.90.0020 as electrical conduit tubing of base metal lined with insulting material. The interior epoxy enamel coating applied to the finished electrical conduit constitutes "insulating material" within the meaning of subheading 8547.90.0020 *because the coating provides electrical insulation by constituting a barrier against the transfer of electrons to the interior metal surface of the pipe, thereby increasing the electrical resistivity of the conduit.*

Compl. ¶ 50 (emphasis added).

Plaintiff further supports this argument by listing the physical capabilities of the electrical conduit. For instance, plaintiff contends that: "[t]he interior epoxy enamel coating also provides *electrical insulation* to reduce the risk of electrical short circuits in the event of frayed or damaged wiring;" that "[t]he interior epoxy enamel coating *resists the flow of electric charges by preventing or limiting the flow of electrons across the surface* or through the volume of the coating material;" and that "[i]f there is a frayed wire inside the conduit, the internal epoxy *enamel coating will provide a barrier against the transfer of electrons* to the applied surface." Compl. ¶¶ 20, 21, 23 (emphasis added).

Plaintiff also hired an expert to perform electrical testing on the interior coating of the subject electrical conduit to determine its "electrical insulation properties." Compl. ¶ 25.

Plaintiff contends that this expert determined that "there was a substantial increase in surface electrical resistivity of the electrical conduit coating with the interior epoxy enamel coating compared to the uncoated tubing." Compl. ¶ 26.

In our answer, we did not admit the allegations cited above regarding the electrical insulation or resistivity provided by the interior coating. Answer ¶¶ 20, 21, 23, 25, 26, 50. Thus, plaintiff has squarely placed at issue whether the interior coating of the subject electrical conduit provides electrical insulation. We intend to show that it does not. Ultimately, this question will be resolved by the trier of fact, *i.e.*, the Court.

Here, Dr. Meliopoulos's testimony is relevant to the facts put at issue by plaintiff in its complaint and will assist the trier of fact in the resolution of this matter because his testing, analysis, and opinions relate to whether the interior coating of the subject electrical conduit provides electrical insulation.

In his report Dr. Meliopoulos explains the process by which he determined that the interior coating of the electrical conduit does not provide electrical insulation. Def. Ex. 1 at 4–8. For example, he evaluated the electrical resistance (or impedance) provided by the interior coating by employing a 4-wire test method to inject electrical current and measure the voltage across the conduit sample. Def. Ex. 1 at 17–18. Based upon widely accepted ranges of resistivities for electrical classification of materials (Def. Ex. 1 at 4), and the thickness of the coating as measured by plaintiff's expert (Def. Ex. 1 at 4), Dr. Meliopoulos determined that for the coating material to be considered electrically insulating it would have to exhibit an electrical resistance in the range of 20 to 92 billion ohms. Def. Ex. 1 at 6. The results of his testing demonstrated that the interior coating provided no more than 14.043 milliohms of electrical resistance (or impedance). Def. Ex. 1 at 21. Consequently, Dr. Meliopoulos concluded that the

12

interior coating was insufficient to provide electrical insulation.  Def. Ex. 1 at 6 ("The measured values of electrical resistance were in the milliohm range and thus are 12 orders of magnitude lower than those of an insulator.").

Additionally, Dr. Meliopoulos reviewed information provided by plaintiff regarding the physical capabilities of the electrical conduit to conclude that it cannot insulate against electricity.  Def. Ex. 1 at 9–10.  Dr. Meliopoulos notes that plaintiff advertises its electrical conduit as being compliant with National Electrical Code (NEC) section 250.118 (recognizing electrical conduit as an effective ground conductor) and as providing system grounding.  Def. Ex. 1 at 9.  Dr. Meliopoulos explains that electrical conduit capable of providing system grounding is installed in such a manner that, should an electrical fault occur inside the conduit (*i.e.*, electricity escaping from the wires housed inside of the conduit), the interior of the conduit will conduct electricity and provide a path to ground.  Def. Ex. 1 at 9–10.  If the interior of the conduit is capable of conducting electricity, it cannot provide electrical insulation.  Def. Ex. 1 at 3.

Because plaintiff claims in the complaint the interior coating of the electrical conduit is electrically insulating, Dr. Meliopoulos's testimony regarding his testing and analysis, which determined that the interior coating does not provide electrical insulation, is relevant and will assist the fact finder in resolving this dispute.  Consequently, the Court should consider and admit his testimony and deny plaintiff's motion.

## IV.   PLAINTIFF'S REMAINING ARGUMENTS IN SUPPORT OF THE MOTION IN LIMINE ARE WITHOUT MERIT

Finally, plaintiff's motion in limine should be denied because plaintiff's remaining legal analysis is flawed.  For instance, Plaintiff's reliance upon *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) is misplaced because the facts and question presented in *Joiner* are distinguishable from

the facts presented here.  In *Joiner* the plaintiff's expert opined that the chemicals to which plaintiff was exposed had contributed to his development of cancer.  *Id.* at 144.  However, the expert supported his opinion with studies performed on animals.  *Id.* at 144–45.  The Supreme Court affirmed the district court's preclusion of the expert's testimony because "[t]he studies [relied upon] were so dissimilar to the facts present in this litigation that it was not an abuse of discretion . . . to have rejected the experts' reliance on them.  *Id.*  Thus, the court concluded "that there is simply too great an analytical gap between the data and the opinion proffered."  *Id.* at 146.

Here, Dr. Meliopoulos's opinion does not suffer from a similar analytical gap.  Indeed, Dr. Meliopoulos's conclusion that the interior coating does not provide electrical insulation is supported by testing he conducted on the samples of the merchandise at issue in this litigation.  Def. Ex. 1 at 4–8, 16–31.  Moreover, Dr. Meliopoulos's opinion is further supported by plaintiff's acknowledgement that the electrical conduit is capable of providing system grounding, which would require that the interior coating conduct electricity in the event of an electrical fault occurring inside the conduit.  Def. Ex. 1 at 9–11.  Thus, unlike the testimony of the proposed expert witness in *Joiner*, Dr. Meliopoulos's opinion is not based upon "subjective belief or unsupported speculation."  *Joiner*, 522 U.S. at 140.

## CONCLUSION

In conclusion, Dr. Meliopoulos's testimony is admissible under FRE 702 and the standards articulated by the Supreme Court in *Daubert* because he is eminently qualified to render an opinion on the electrical insulation provided by the interior coating of the electrical conduit and his testimony on this topic is relevant to resolving an issue that is disputed in this litigation.  For these reasons, plaintiff's motion should be denied.

WHEREFORE, the Government respectfully requests that plaintiff's motion to prelude be denied.

<div style="margin-left: 40%;">

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

By:    /s/ Peter A. Mancuso
PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-0484 or 9230
*Attorneys for Defendant*

</div>

Dated: May 2, 2022